Concurring opinion filed by Circuit Judge PLAGER.
PER CURIAM.
This case raises an important question: what standard for indefiniteness should the U.S. Patent and Trademark Office (“USPTO”) apply to pre-issuance claims? The parties point to no case in which we previously have addressed this question.
The Patent Trial and Appeal Board (“Board”) held Mr. Packard’s applied-for patent claims indefinite, and therefore not in compliance with the statutory drafting requirements of 35 U.S.C. § 112(b), which provide that the specification conclude with “one or more claims particularly pointing out and distinctly claiming” the subject matter of the invention.[1] Mr. Packard, on appeal to this court, insists that the Board misapplied the standard of indefiniteness by finding his claims indefinite on grounds that they “contain[] words or phrases whose meaning is unclear.” J.A. 14. He believes that, had the Board applied an “insolubly ambiguous” standard to his claims, those claims would not have been held indefinite.
For the reasons we shall explain, we affirm the Board’s rejection of Mr. Packard’s claims.
Background
The application in this appeal covers a coin change holder. J.A. 24. The coin holder is a thin plastic card that has four different channels on its front surface for storing different types of coins, as shown in the patent figures reproduced below. J.A. 24.
[[Image here]]
Figure 1 shows a frontal view of the card and Figure 2 shows a cross-section of the card. J.A. 37.
The examiner rejected Mr. Packard’s original application on three grounds: lack of adequate written description, claim indefiniteness, and obviousness. J.A. 145-47. Following this rejection, Mr. Packard cancelled all of his original claims and substituted a new set of claims numbered 28 through 37. J.A. 95-99.
Claims 28 through 37 are at issue in this appeal, of which claims 28, 29 and 34 are representative:
28. I claim a small, thin, flat plane, rectangular change holding card and wallet/billfold or purse construction with *1310 the front top side of the card comprising three raised, straight, parallel, double flanged separators and two raised, straight, parallel, double flanged side edges and a raised side edge end thereby forming four parallel, side by side, flanged coin holding channels or rows of the same length and of different widths, one for quarters, one for dimes, one for nickels, and one for pennies, that are similarly blocked at one side edge by the raised side end edge with the other side of the channel/rows open except for small, fixed, flexible, partially moveable, rubber or plastic retainers that are attached to the topside and ends of the double flanged separators such that coins can be retained on the card and yet slide freely above the surface of the card and obliquely overlap as necessary within the channel/rows between the separators while the bottom, back side of the card is constructed with a wallet, billfold or purse extending from it.
29. The change holding card wallet, billfold, purse of claim 28, wherein the change holding card is constructed as part of the wallet, billfold, or purse and affixed to a surface and contained within the wallet, billfold or purse.
34. I claim a small thin uniformly flat plane rectangular coin holding card Comprising side edge retainers, a closed side retainer, small inclined/sloped end protrusions, multiple raised parallel, straight and double flanged channel/row separators, small flexible protruding retainers on the top side ends of the channel/row separators, all of which are arranged on the upper surface of the card such that a various denomination of coins can be held and retained on the card within a respective channel/row and can slide freely within the double flanges and slightly above the flat surface of the card and can also be stored obliquely partially overlapping.
J.A. 95-98.
The examiner, in his final rejection, again found the pending claims invalid on the same three grounds: claims 28-33 and 37 for lack of written description, claims 28-37 for indefiniteness, and claims 28-37 for obviousness. J.A. 108-14. Regarding written description, the examiner noted that, while the claims required the change holding card to be attached to a wallet, this feature was not supported by the written description. J.A. 109. Regarding indefiniteness, the examiner pointed out that several claim limitations failed to meet the requirements of 35 U.S.C. § 112(b) because they lacked an antecedent basis or were otherwise unclear. J.A. 109-10.
Mr. Packard appealed the examiner’s final rejection to the Board, which affirmed the examiner’s written description and indefiniteness rejections, while reversing the obviousness rejection. J.A. 7-19. In the course of affirming the examiner’s indefiniteness rejection, the Board applied the review standard set forth in the Manual of Patent Examining Procedure (“MPEP”) § 2173.05(e), namely, “[a] claim is indefinite when it contains words or phrases whose meaning is unclear.” J.A. 14. On rehearing, the Board declined to modify its decision. J.A. 2-5.
Mr. Packard appeals the Board’s decision. In its response to Mr. Packard’s opening brief on appeal, the USPTO focused on the indefiniteness issue, noting that, if we affirm the Board on that issue, which applies to all the claims, the adequacy of the written description, applicable to only some of the claims, becomes a moot issue. We accept the USPTO’s suggestion that we address first the claim indeflniteness issue because it relates to all of the claims and it necessarily implicates the *1311 question of the content of the written description.
Actions of the USPTO are reviewed by us in accordance with the requirements of the Administrative Procedure Act. 5 U.S.C. § 701 et seq.; see Kappos v. Hyatt, — U.S.-, 132 S.Ct. 1690, 1694, 182 L.Ed.2d 704 (2012) (citing Dickinson v. Zurko, 527 U.S. 150, 152, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)). Questions of law, as interpreted and applied by the agency, are given plenary review on appeal. Capon v. Eshhar, 418 F.3d 1349, 1351 (Fed.Cir.2005). Indefiniteness, as a subset of claim construction, is a question of law which this court reviews without deference. Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc., 554 F.3d 1010, 1022 (Fed.Cir.2009).
We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a).
Discussion
1.
Petitioner Packard casts his appeal on broad grounds. First, he contends that the standard applied by this court for determining indefiniteness of a term in a claim under 35 U.S.C. § 112(b) is governed by the phrase “insolubly ambiguous.” Under this standard, he tells us, a claim is not indefinite if a court can give any meaning to the disputed term in the context of the claim.
Second, Mr. Packard contends that the “insolubly ambiguous” standard of this court for indefiniteness is mandated not only for our use in deciding cases in which the patent has already issued and is being challenged (“post-issuance cases”), but also for cases in which no patent has yet issued and in which the applied-for claims are being evaluated by the USPTO (“pre-issuance cases”). He states that this standard is more favorable to his case than the standard applied to his claims by the USP-TO.
For the reasons we shall explain, we believe that the case before us can be resolved without addressing the broad issues raised by Mr. Packard. We conclude that, when the USPTO has initially issued a well-grounded rejection that identifies ways in which language in a claim is ambiguous, vague, incoherent, opaque, or otherwise unclear in describing and defining the claimed invention, and thereafter the applicant fails to provide a satisfactory response, the USPTO can properly reject the claim as failing to meet the statutory requirements of § 112(b). The satisfactory response by the applicant can take the form of a modification of the language identified as unclear, a separate definition of the unclear language, or, in an appropriate case, a persuasive explanation for the record of why the language at issue is not actually unclear. On the facts before us, this holding suffices to uphold the rejection that occurred here.
2.
The grounds for this holding derive from a combination of the USPTO’s examination function under 35 U.S.C. § 131 et seq. and the substantive standard of 35 U.S.C. § 112(b). Congress assigned to the USP-TO the responsibility to examine applications to ensure compliance with the statutory criteria for issuance of a patent. 35 U.S.C. § 131. In the USPTO, an applicant’s “claim is, or is supposed to be, examined, scrutinized, limited, and made to conform to what he is entitled to.” Keystone Bridge Co. v. Phoenix Iron Co., 95 U.S. 274, 278, 24 L.Ed. 344 (1877).
Congress also provided for examination to be an interactive process, which it commonly is. One or more rejections or objections by an examiner based on identified problems are followed by one or more responses from the applicant that address the identified problems, whether by revis *1312 ing claims or by furnishing information and explanation that shows why the initially perceived problems are not problems after all. 35 U.S.C. § 132; see also id. §§ 133, 134. The examination system regularly involves substantive interaction with applicants, relying on their distinctive incentives and abilities to enhance understanding and to help the USPTO ensure compliance with statutory standards.[2]
The USPTO must be able to make the congressionally created examination process work so that it fulfills its purpose of producing patents whose claims meet the statutory standards. We earlier approved a procedural mechanism for the USPTO to use in doing this, which we refer to as the “prima facie case.” See In re Piasecki, 745 F.2d 1468 (Fed.Cir.1984). “In the prosecution of a patent, the initial burden falls on the PTO [examiner] to set forth the basis for any rejection.” Hyatt v. Dudas, 492 F.3d 1365, 1369-70 (Fed.Cir.2007). The USPTO thus meets its obligation to explain adequately the shortcomings it perceives so that the applicant is properly notified and able to respond. “Once the applicant is so notified, the burden shifts to the applicant to rebut the prima facie case with evidence and/or argument.” Id.
The “prima facie case” determination is a purely procedural device that operates at the examiner level to clarify how the interaction process proceeds. Thereafter any final rejection by the examiner, and any review of the rejection, whether by the Board or through appeal to the courts, turns on the substantive question of the merits of the rejection. In re Piasecki, 745 F.2d at 1472 (citing In re Rinehart, 531 F.2d 1048, 1052 (CCPA 1976) (“When prima facie obviousness is established and evidence is submitted in rebuttal, the decision-maker must start over.... An earlier decision should not, as it was here, be considered as set in concrete, and applicant’s rebuttal evidence then be evaluated only on its knockdown ability.... [A] final finding of obviousness may of course be reached, but such finding will rest upon evaluation of all facts in evidence, uninfluenced by any earlier conclusion reached____”)); see also In re Jung, 637 F.3d 1356, 1362 (Fed.Cir.2011).
The same approach to making the examination process work is an appropriate one for addressing the question of indefiniteness. We have elsewhere noted that indefiniteness rejections by the USPTO arise in a different posture from that of indefiniteness challenges to an issued patent. See Exxon Research & Eng’g v. United States, 265 F.3d 1371, 1380 (Fed.Cir.2001). It makes good sense, for definiteness and clarity as for other validity requirements, for the USPTO initially to reject claims based on a well-founded prima facie case of lack of clarity (in its several forms) based on the perspective of one of ordinary skill in the art in view of the entire written description and developing prosecution history. Then, if the applicant does not adequately respond to that prima facie case, to confirm that rejection on the substantive basis of having failed to meet the requirements of § 112(b). Furthermore, we can reach that conclusion and decide the present case without regard to the proper formulation of the judicially-applied indefiniteness standard that may be appropriate for post-issuance assessment of indefiniteness, a matter currently *1313 under review by the Supreme Court. See Biosig Instruments, Inc. v. Nautilus, Inc., 715 F.3d 891 (Fed.Cir.2013), cert. granted, — U.S. -, 134 S.Ct. 896, 187 L.Ed.2d 702 (2014).
As the statutory language of “particular[ity]” and “distinct[ness]” indicates, claims are required to be cast in clear — as opposed to ambiguous, vague, indefinite— terms. It is the claims that notify the public of what is within the protections of the patent, and what is not. See, e.g., Merrill v. Yeomans, 94 U.S. 568, 573-74, 24 L.Ed. 235 (1876); United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232 (1942).
At the same time, this requirement is not a demand for unreasonable precision. The requirement, applied to the real world of modern technology, does not contemplate in every case a verbal precision of the kind found in mathematics. Nor could it do so in a patent system that actually works, in practice, to provide effective protection for modern-day inventions. Rather, how much clarity is required necessarily invokes some standard of reasonable precision in the use of language in the context of the circumstances. See Georgia-Pacific Corp. v. U.S. Plywood Corp., 258 F.2d 124, 136 (2d Cir.1958) (“[Pjatentable inventions cannot always be described in terms of exact measurements, symbols and formulae, and the applicant necessarily must use the meager tools provided by language, tools which admittedly lack exactitude and precision. If the claims, read in the light of the specifications, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more.”).
The USPTO, in examining an application, is obliged to test the claims for reasonable precision according to these principles. We have recognized the importance of the role that the USPTO can play in ensuring that patent claims are clear and unambiguous. For example, in In re Zletz, 893 F.2d 319, 321-22 (Fed.Cir.1989), a patent interference case, the court said:
during patent prosecution [ ] claims can be amended, ambiguities should be recognized, scope and breadth of language explored, and clarification imposed.... An essential purpose of patent examination is to fashion claims that are precise, clear, correct, and unambiguous. Only in this way can uncertainties of claim scope be removed, as much as possible, during the administrative process.
Recently, in Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1255 (Fed.Cir.2008) (affirming the district court’s finding that the term “fragile gel” was indefinite), the court said:
We note that the patent drafter is in the best position to resolve the ambiguity in the patent claims, and it is highly desirable that patent examiners demand that applicants do so in appropriate circumstances so that the patent can be amended during prosecution rather than attempting to resolve the ambiguity in litigation.
3.
Given the role of the applicant in the process, it is a reasonable implementation of the examination responsibility, as applied to § 112(b), for the USPTO, upon providing the applicant a well-grounded identification of clarity problems, to demand persuasive responses on pain of rejection. That approach decides this case, because Mr. Packard did not offer a satisfactory response to well-grounded indefiniteness rejections in this case. The examiner here, having ample grounds, set forth a variety of ways in which he found the claims imprecise or confusing, sometimes not even understandable, considering them in light of the written description. *1314 See J.A. 109-12 (June 2010); J.A. 146-47 (Feb.2011); J.A. 172-73 (July 2011); J.A. 228 (Feb.2012); see also the more detailed factual discussion in Judge Plager’s concurring opinion.
Mr. Packard did not respond adequately to this group of claim language problems. He ignored some entirely. As to others, he offered brief explanations of what he thought certain material in the written description and figures showed. But he did not focus on the claim-language difficulties, nor did he propose clarifying changes or show why, on close scrutiny, the existing claim language really was as reasonably precise as the circumstances permitted. See J.A. 126 (Nov.2010); J.A. 151 (May 2011); J.A. 190-193 (Nov.2011); J.A. 244 (Sept.2012).
The Board relied on this failure of response to the examiner’s well-grounded rejections in affirming on the merits the examiner’s final rejection. The Board reviewed and agreed with the examiner’s identification of the indefiniteness problems that constituted Mr. Packard’s failure to adequately comply with the statutory requirements of § 112(b), and for which there had been no satisfactory response from Mr. Packard. J.A. 14-16. On reconsideration, the Board stood by its affirmance of the rejection, noting the crucial distinction between what Mr. Packard argued and what is required to address an indefiniteness problem: Mr. Packard’s “arguments focus on what is contained in the disclosure, whereas the indefiniteness to which [§ 112(b) ] is applied is in the language of the claims.” J.A. 5.
In some cases it is difficult enough for courts to construe claims when the draftsperson has made every effort to be clear and concise, let alone when the claims have readily observable ambiguities or incoherencies within them. Because Mr. Packard had an opportunity to bring clarity to his claim language, we affirm the Board’s findings as to indefiniteness under the MPEP standard properly applied by the USPTO, the standard which we have here approved.
In view of our judgment upholding the Board’s determination that the applied-for patent claims are invalid for failure to comply with the requirements of § 112(b), the requirement that a claim “particularly point[ ] out and distinctly claim[ ] the subject matter ...,” we need not address the further issue of the problems with the written description under § 112(a).[3]
Conclusion
We affirm the Board’s decision on indefiniteness and approve the Board’s application of the standard on which it is based.
AFFIRMED

. The patent in this case was filed prior to the September 16, 2012 effective date of § 4(c) of the Leahy-Smith America Invents Act ("AIA”), Pub.L. No. 112-29, which replaces paragraph 2 of 35 U.S.C. § 112 with newly designated § 112(b). For the benefit of current readers, we have adopted the current designation as the text in relevant part is unchanged.

. See, e.g., Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1284 (Fed.Cir.2005) (upholding examiner demand, under 37 C.F.R. § 1.105, for "information that the applicant is in the best position to most cheaply provide”); see also, USPTO, Notice of Public Hearing and Request for Comments on Issues Related to the Identification of Prior Art During the Examination of a Patent Application, 64 Fed. Reg. 28803, 28805 (1999) (stressing that "inventors are generally in the best position to be aware of the state of the art”).

. Similar to paragraph 2, paragraph 1 of 35 U.S.C. § 112 was replaced with newly designated § 112(a) by § 4(c) of the AIA; as explained previously, we have adopted the current designators.