NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**TINNUS ENTERPRISES, LLC,**
*Appellant*

**v.**

**TELEBRANDS CORPORATION,**
*Appellee*

_____

2017-1726

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2015-00018.

_____

Decided:  May 30, 2018

_____

THOMAS MANSFIELD DUNLAP, Dunlap Bennett & Ludwig PLLC, Leesburg, VA, argued for appellant.  Also represented by DAVID LUDWIG, ROBERT D. SPENDLOVE; BRIAN M. KOIDE, Vienna, VA; CORTLAND CHRISTOPHER PUTBRESE, Richmond, VA; THOMAS MILTON CROFT, Fort Collins, CO; JEFFREY AHDOOT, Washington, DC; JASON DANIEL EISENBERG, ROBERT GREENE STERNE, JONATHAN TUMINARO, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC.

MORGAN CHU, Irell & Manella LLP, Los Angeles, CA, argued for appellee. Also represented by ROBERT THOMAS MALDONADO, TONIA A. SAYOUR, VISHAL PARIKH, Cooper & Dunham, LLP, New York, NY; ERIC J. MAURER, Boies, Schiller & Flexner, LLP, Washington, DC.

--------

Before O'MALLEY, WALLACH, and HUGHES, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Tinnus Enterprises, LLC ("Tinnus") appeals from a final written decision of the Patent Trial and Appeal Board ("Board") in a post-grant review ("PGR") proceeding finding that Telebrands Corporation ("Telebrands") had demonstrated by a preponderance of the evidence that claims 1–6, 8, and 10–14 of U.S. Patent No. 9,051,066 ("the '066 patent") are unpatentable for indefiniteness under 35 U.S.C. § 112(b) (2012). *Telebrands Corp. v. Tinnus Enters., LLC*, No. PGR2015-00018, 2016 WL 7985419, at *1 (P.T.A.B. Dec. 30, 2016) ("*Board Decision*").

As a threshold issue, Tinnus challenges the Board's decision granting institution, arguing that the Board applied the wrong statutory standard for instituting a PGR proceeding. Tinnus also appeals the Board's final written decision, arguing that the Board erred in applying the standard for indefiniteness articulated in *In re Packard*, 751 F.3d 1307 (Fed. Cir. 2014), rather than the standard articulated in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), and that, regardless, the '066 patent survives either standard. Because the Board erred in its analysis, we *reverse* the Board's finding of indefiniteness and *remand* to allow the Board to address the alleged obviousness grounds.

## I. BACKGROUND

### A. The '066 Patent and Prosecution History

The '066 patent, assigned to Tinnus, issued on June 9, 2015, and is directed to an apparatus that fills inflatable containers, such as balloons, with fluid, such as water. *See* '066 patent, col. 1, ll. 26–30. Specifically, the patent discloses an apparatus comprising a housing attached to a plurality of flexible hollow tubes, which are, in turn, attached to a plurality of containers by elastic fasteners. *Id.* at col. 6, ll. 30–41. The '066 patent discloses that each elastic fastener is configured such that "shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes thereby causing the elastic fastener[] to automatically seal the containers." *Id.* at col. 6, ll. 46–51; *see also id.* at col. 6, ll. 41–51.

Figure 1, reproduced below, is "a simplified diagram illustrating an example embodiment" of the invention. *Id.* at col. 2, ll. 33-34.



The '066 patent discloses, in Figure 1, that fluid enters through a hose 14 and flows down through a housing 12 and a plurality of hollow tubes 16 into a plurality of containers 18. *See id.* at col. 2, ll. 33–53. The containers are "clamped" by "elastic valves" such as "elastic fasteners." *Id.* at col. 2, ll. 51–59. "When [the] containers 18 have reached a desired size and/or they are filled with the desired volume of fluid, they may be removed from tubes 16. They can be removed . . . by shaking them off[.]" *Id.* at col. 4, ll. 60–64.

Claim 1, the sole independent claim, is representative of the invention, and recites:

1. An apparatus comprising:

a housing comprising an opening at a first end, and a plurality of holes extending through a common face of the housing at a second end;

a plurality of flexible hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;

a plurality of containers, each container removably attached to a respective one of the hollow tubes; and

a plurality of *elastic fasteners*, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener *configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled* with water, and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, *such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach* from the hollow tubes thereby

> causing the elastic fasteners to automatically seal the containers, wherein the apparatus is configured to fill the containers substantially simultaneously with a fluid.

*Id.* at col. 6, ll. 30-51 (emphases added).

The specification does not define claim term "substantially filled." Nor does the term appear anywhere in the specification. The specification does, however, discuss the term "filled" in the context of detaching the container from the hollow tube. *See, e.g., id.* at col. 3, ll. 48–51 ("After containers 18 have reached a desired size or volume, they may be detached from tubes 16. In one example embodiment, *filled containers* 18 may be detached by pulling them away from tubes 16." (emphases added)).

In fact, original claim 1 of the application that issued as the '066 patent did not recite "substantially filled." J.A. 106–07. Rather, the examiner introduced "substantially filled" and its surrounding claim language in an examiner amendment in the Notice of Allowance. *Id.* Specifically, the examiner added the below underlined language to claim 1:

> A plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener configured to <u>provide a connecting force that is not less than a weight of one of the containers when *substantially filled* with water, and to</u> automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, <u>such that shaking the hollow tubes in a state in which the containers are *substantially filled* with water overcomes the connecting force and causes the containers to detach from the hollow tubes there-</u>

> by causing the elastic fasteners to automatically
> seal the containers . . . .

J.A. 106–07 (emphases added). In the examiner's reasons for allowance, the examiner stated that these additions "define a configuration and functional capability of the elastic fasteners that is not taught by [the prior art]. In particular, the language beginning with 'such that shaking . . . ' defines an upper limit of the connecting force and thus defines the elastic fastener in a way that distinguishes over [the prior art]." J.A. 107–08. The '066 patent issued shortly thereafter.

## B. The Post-Grant Review Proceeding

On June 22, 2015, Telebrands filed a petition to institute a PGR of claims 1–14 of the '066 patent on grounds that the claims are more likely than not unpatentable under 35 U.S.C. §§ 103 and 112. Before the Board issued its institution decision, Tinnus filed a statutory disclaimer under 35 U.S.C. § 253(a), disclaiming claims 7 and 9 of the '066 patent. *Telebrands Corp. v. Tinnus Enters., LLC*, No. PGR2015-00018, 2016 WL 270152, at *1 n.1 (P.T.A.B. Jan. 4, 2016) ("*Board Institution Decision*"). On January 4, 2016, the Board granted institution on both §§ 103 and 112 grounds after "determin[ing] that the information presented in the Petition demonstrates that it is more likely than not that [Telebrands] would prevail in showing that the challenged claims, except claims 7 and 9, are unpatentable." *Id.* at *1.

On December 30, 2016, the Board issued a final written decision in the PGR. In its decision, the Board applied the indefiniteness standard articulated in *In re Packard* to find that the claim term "substantially filled" was indefinite, and therefore, rendered all challenged claims of the '066 patent unpatentable. *Board Decision*, at *6–14. Because the Board found all challenged claims indefinite, it did not reach the instituted obviousness grounds.

C.  The Concurrent Litigation

After the Board instituted the PGR, but before it is-sued the final written decision, Tinnus filed a complaint against Telebrands alleging that Telebrands's product, Balloon Bonanza, infringes the '066 patent. *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-cv-00551-RC-JDL, ECF No. 66 (E.D. Tex. Sept. 11, 2015) ("*Tinnus I*"). In that case, Tinnus moved for a preliminary injunction. The district court granted the motion after applying the indefiniteness standard articulated in *Nautilus* to find that Telebrands "ha[s] not raised a substantial question concerning the validity of the '066 [p]atent based on the claim term 'substantially filled' being indefinite." *Tinnus I*, slip op. at 10–11. Telebrands appealed. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017) ("*Tinnus II*").

On January 24, 2017, after the Board issued its final written decision in the PGR at issue in this appeal, this court affirmed the district court's order granting Tinnus's motion for a preliminary injunction in *Tinnus I*. *Id.* at 1194. In affirming the order, we found that "the district court's conclusion that Telebrands' indefiniteness argu-ment failed to raise a substantial question of validity does not suffer from a clear or obvious error." *Id.* at 1206 (internal quotations omitted). Rather, "[w]e f[ou]nd it difficult to believe that a [person of ordinary skill in the art, defined as] a person with an associate's degree in a science or engineering discipline[,] who had read the specification and relevant prosecution history would be unable to determine with reasonable certainty when a water balloon is 'substantially filled.'" *Id.*

Tinnus now challenges the Board's decision granting institution and appeals from the Board's final written decision finding the challenged claims unpatentable. We have jurisdiction to review the Board's final written decision pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

First, Tinnus challenges Board's decision granting institution, arguing that the Board applied the wrong statutory standard for institution. Second, Tinnus appeals the final written decision, arguing that the Board erred in applying the standard for indefiniteness articulated in *Packard* rather than the standard articulated in *Nautilus*, and that, regardless, the claim term "substantially filled" is not indefinite under either standard.[1] We address each issue in turn.

### A. The Standard for Instituting Post-Grant Review

Section 324(a) of the Patent Act sets forth the standard for instituting a PGR, and states that "[t]he Director may not authorize a post-grant review to be instituted unless the Director determines the information presented in the petition . . . would demonstrate that it is more

---

[1]    The Director of the PTO intervened in this appeal to support Telebrands's positions on two issues—first, the PTO advanced the *Packard* standard as the correct indefiniteness standard in both examinations and PGR proceedings, and second, the PTO reiterated that decisions to institute are nonappealable under *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016). Prior to oral argument, however, the PTO moved to withdraw as intervenor, stating that "[t]he USPTO stands by the position that the indefiniteness approach advocated in our brief is correct in the context of examination. But because the [Board]'s approach to claim construction and indefiniteness during post-issuance proceedings under the America Invents Act is something the agency is actively considering, the Director has decided not to advocate for a particular approach in this appeal." *Tinnus Enters., LLC v. Tinnus Corp.*, No. 17-1726, ECF No. 73, slip op. at 1–2 (Fed. Cir. Mar. 29, 2018).

likely than not that at least 1 of the claims challenged in the petition is unpatentable." In comparison, § 314(a) imposes a lower standard for institution of inter partes review ("IPR") proceedings, stating that the Director may institute an IPR only if he determines that the petition "shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

Tinnus argues that the Board exceeded its statutory authority when it instituted the PGR because it applied the lower, "reasonable likelihood" standard for instituting IPRs rather than the higher, "more likely than not" standard for instituting PGRs. Telebrands argues that the question of whether the Board applied the incorrect standard for institution is nonappealable under *Cuozzo*. *See* Appellee's Br. 16 (citing 35 U.S.C. § 324(e)). We need not decide the appealability issue because, as explained below, we would reach the question of whether the Board erred in its final written decision regardless of whether the institution decision is appealable.

As Tinnus notes, the Board recites the "reasonable likelihood" standard at various places in its decision granting institution. *See, e.g.*, *Board Institution Decision*, at *8 ("Petitioner has demonstrated a reasonable likelihood of prevailing under 35 U.S.C. § 112(b)[.]"); *id.* at *14 ("For the foregoing reasons, we determine that Petitioner has established a reasonable likelihood of prevailing under 35 U.S.C. § 103(a)[.]); *id.* ("Petitioner also has established a reasonable likelihood of prevailing under 35 U.S.C. § 112(b)[.]"). Although these statements may be imprecise, they do not amount to error because the Board made specific findings and an ultimate determination under the correct standard recited in § 324(a).

For example, when assessing the indefiniteness grounds, the Board found that, "[d]ue to the ambiguity in both how much volume a container holds when it is 'sub-

stantially filled' and how much 'shaking' the hollow tubes must be subjected to, a skilled artisan would be unable to determine whether a given apparatus does or does not have the shake-to-detach feature[.]" *Id.* at *8. Additionally, the Board concluded that it was "persuaded at this stage of the proceeding that the [disputed claim language] is indefinite." *Id.* at *7. Further, when assessing the instituted obviousness grounds, the Board "determine[d] that [Telebrands] ha[d] provided adequate articulated reasoning with rational underpinning to support a legal conclusion of obviousness . . . based on the combined teachings of" the prior art. *Id.* at *13. These statements indicate that the Board made specific findings under the correct, "more likely than not" standard.

Indeed, the Board stated the correct standard in its ultimate determination that "the information presented in the Petition demonstrates that it is more likely than not that [Telebrands] would prevail in showing that the challenged claims . . . are unpatentable." *Id.* at *1.

Thus, even if this issue were appealable, we would find that the Board did not err in instituting the PGR because it made explicit determinations under the correct, "more likely than not" standard; references to "a reasonable likelihood" were harmless.

## B. The Board Erred in Finding the '066 Patent Indefinite

The definiteness requirement, set out in 35 U.S.C. § 112(b), states that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." Indefiniteness is a legal question with underlying factual determinations. *Azko Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016). We review the Board's legal conclusions de novo and its underlying findings of fact for

substantial evidence.  *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012).

In *Nautilus*, the Supreme Court articulated the standard for whether a claim in an issued patent meets the definiteness requirement under § 112, ¶ 2, now § 112(b).  134 S. Ct. at 2129.  There, the Supreme Court stated that it "read[s] § 112 . . . to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Id.*  The Court specifically addressed indefiniteness in the context of *issued patent claims* asserted in a district court litigation.  *Id.* at 2126–27.  The Supreme Court did not expressly limit its holding to that context, however.

In *Packard*, which pre-dates *Nautilus,* we addressed indefiniteness in a different context.  There, we resolved the limited question of "what standard for indefiniteness should the [PTO] apply to *pre-issuance* claims[.]"  751 F.3d at 1309 (emphasis added).  We held that an examiner may properly reject a pending claim as indefinite if it "contains words or phrases whose meaning is unclear."  *Id.* at 1309–10.  We based our holding, in part, on the PTO's examination function "to ensure compliance with the statutory criteria" during the pre-issuance process, and the "substantive interaction" that occurs between the examiner and the applicant during prosecution.  *Id.* at 1311-12.  The PTO continues to apply this standard today for pre-issuance assessment of indefiniteness.  Manual of Patent Examining Proc. § 2170.02.

We expressly acknowledged in *Packard* that, at that time, the Supreme Court was reviewing in *Nautilus* the question of what indefiniteness standard should apply to issued patents; we therefore decided the question before us in *Packard* "without regard to the proper formulation of the judicially-applied indefiniteness standard that may

be appropriate for *post-issuance* assessment of indefinite-ness[.]" *Id.* at 1312-13, (emphasis added).

Here, Tinnus argues that the Board erred in applying *Packard* to assess the indefiniteness of its issued patent in the context of a PGR. Telebrands responds that the *Packard* standard should apply in this context because post-grant review proceedings share more similarities with examinations than with district court litigations. Neither party points to any binding precedent that direct-ly addresses this question, and the PTO has not promul-gated a rule addressing which standard should apply. Importantly, moreover, neither party explains why a choice between the two standards would affect our review of the final written decision.[2]

In his motion to withdraw as intervenor, the Director stated that the "[Board]'s approach to claim construction and indefiniteness during post-issuance proceedings under the America Invents Act is something the agency is actively considering[.]" No. 17-1726, ECF No. 73, slip op. at 1 –2. This suggests that the PTO may promulgate rules surrounding this issue in the future. Indeed, the PTO recently issued a notice of proposed rulemaking for claim construction that "proposes to replace the broadest reasonable interpretation ('BRI') standard for construing unexpired patent claims in [post-grant] proceedings with a standard that is the same as the standard applied in federal district courts[.]" Changes to Claim Construction Standard for Interpreting Claims In Trial Proceedings Before the Patent Trial and Appeal Board, 83 Fed. Reg. 21,221 (proposed May 9, 2018) (to be codified at 37 C.F.R.

---

[2]    After the Supreme Court decided *Nautilus*, the appellant in *Packard* petitioned the Supreme Court for writ of certiorari to review this court's decision. *Packard v. Lee*, 135 S. Ct. 2310 (2015). The Supreme Court denied the petition. *Id.*

pt. 42). While that notice does not address indefiniteness, it does indicate that the Director is committed to reassessing questions such as that presented here.

We need not decide which standard governs PGRs here, because Tinnus concedes that the standard is not dispositive because we may resolve this case in its favor under *Packard*. *See* Appellant's Br. 33 n.4 (arguing the Board incorrectly decided indefiniteness under the *Packard* standard "for the same reasons discussed here under *Nautilus*[.]"); *see also* Oral Arg. at 1:56−2:06, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 17-1726.mp3 (Q: "If we find this not indefinite, even under *Packard*, isn't that enough for you? A: It would be, your honor . . . .").

We, thus, await an appropriate case to resolve any apparent inconsistency between the two indefiniteness standards—one where the result actually turns on such a resolution and any views we express would not be dicta. At that time, we will consider any rulemaking from the Director on the matter.

### 1. The '066 patent is not indefinite under either *Nautilus* or *Packard*

We find that the Board erred in its ultimate legal determination that "substantially filled" is indefinite because the claim language, specification, and prosecution history of the '066 patent provide objective boundaries for understanding the disputed term under either *Nautilus* or *Packard*.

As a threshold matter, we find that use of the relative term "substantially" within the disputed claim term does not render the term indefinite. We have explained "that relative terms such as 'substantially' do not render patent claims so unclear as to prevent a person of skill in the art from ascertaining the scope of the claim." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1359 (Fed. Cir. 2012).

Rather, "[a]s long as claim terms satisfy [the *Nautilus*] test, relative terms and words of degree do not render patent claims invalid." *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1063 (Fed. Cir. 2017). Here, the claim term "substantially filled" satisfies the *Nautilus* standard because, as explained next, the claim language, in view of the specification and prosecution history, inform a person of ordinary skill about the scope of the invention.

We begin our analysis with the claim language. At first blush, the claim term "substantially filled" appears to reference the volume of the container. When read in the context of the surrounding claim language, however, it is clear that "substantially filled" serves to inform a person of ordinary skill of the strength of the elastic fastener disclosed in claim 1. The relevant claim language recites:

> a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener configured to provide *a connecting force that is not less than a weight of one of the containers when substantially filled with water*, and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, *such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes* thereby causing the elastic fasteners to automatically seal the containers, wherein the apparatus is configured to fill the containers substantially simultaneously with a fluid.

'066 patent at col. 6, ll. 30-51 (emphases added).

The claim language indicates that, to meet the limitation of "elastic fastener" with the requisite "connecting force," the apparatus must be "substantially filled" such that it detaches when shaken. Thus, a person of ordinary skill would understand that, to avoid infringement, one could select an elastic fastener that is either weak enough that the container would fall off without shaking or strong enough that a container would not fall off despite shaking.

As Tinnus notes, this reading of the claim language is supported by Dr. Kudrowitz's testimony that "whether a container is substantially filled with water is directly related to the ability to shake and detach that container," and that a person of ordinary skill in the art "would understand that there was a definitive point at which there would be too much water such that the containers would detach without shaking, thereby not practicing the claim." Appellant Br. at 38. This reading is also consistent with statements in the specification that describe various ways in which a container could detach from the tubes, including via gravity, pulling, and shaking. These embodiments serve to inform a person of ordinary skill of the objective boundaries of the claimed limitation.

For example, the specification describes an elastic fastener that is weak enough to detach without shaking when it states that, in some embodiments, "when filled containers 18 reach a threshold weight, they slip off tubes 16 due to gravity." '066 patent, col. 3, ll. 65–col. 4, ll. 5. This type of elastic fastener would not infringe claim 1 because it would detach without shaking and therefore, would not be "substantially filled."

In another instance, the specification contemplates an elastic fastener that is strong enough that it will not detach despite shaking when it states that, in some embodiments, "filled containers 18 may be detached by pulling them away from tubes 16." *Id.* at col. 3, ll. 50–51. This type of elastic fastener also would not infringe claim

1 because it would not detach despite shaking and, therefore, would not be "substantially filled."

Finally, the specification describes the claimed limitation when it states that in other embodiments, "the connecting force holding filled containers 18 to tubes 16 may be overcome by an upward acceleration on tubes, for example, when they are shaken." *Id.* at col. 3, ll. 52–57. Unlike the other two embodiments, this last embodiment describes the claimed limitation, and together, these embodiments demonstrate that the '066 patent is "precise enough to afford clear notice of what is claimed, [and] thereby 'apprise the public of what is still open to them.'" *Nautilus*, 134 S. Ct. at 2129 (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996)) (alterations omitted).

The prosecution history provides further evidence that the claim term is not indefinite. As stated above, the original claims of the application that issued as the '066 patent did not contain the disputed claim term. Rather, the examiner added the language in an examiner's amendment in the Notice of Allowance. In the examiner's reasons for allowance, the examiner stated that these additions "define a configuration and functional capability of the elastic fasteners that is not taught by [the prior art]. In particular, the language beginning with 'such that shaking . . . ' defines an upper limit of the connecting force and thus defines the elastic fastener in a way that distinguishes over [the prior art]." J.A. 107–08.

The examiner's own remarks confirm that the claim language informs a person of ordinary skill of the objective boundaries of the claim term. Additionally, we presume that an examiner would not introduce an indefinite term into a claim when he/she chooses to amend the claim for the very purpose of putting the application in a condition for allowance. *See Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 ("It is presumed that

public officials do their assigned jobs"). Thus, we find that the '066 patent is not indefinite under the *Nautilus* standard because the claims, viewed in light of the specification and prosecution history, inform a person of ordinary skill about the scope of the invention with reasonable certainty.

For the reasons stated above, we also find that the Board erred in its ultimate legal conclusion that the claim term is indefinite under *Packard*. Under *Packard*, "a claim is indefinite when it contains words or phrases whose meaning is unclear." 751 F.3d at 1314. Here, the claims, in the context of the specification, "notify the public of what is within the protections of the patent, and what is not." *Id.* at 1313. Therefore, the claim term is not indefinite under *Packard*.

The Board erred in its analysis when it read the disputed claim term in isolation rather than in the context of the surrounding claim language as § 112(b) requires. *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1350 (Fed. Cir. 2010) ("To comport with § 112's definiteness requirement, the boundaries of the claim, as construed by the court, must be discernible to a skilled artisan based on the language of the claim, the specification, and the prosecution history, as well as other knowledge of the relevant field of art."). This led the Board to assume that "substantially filled" refers to the volume of the container. As noted above, when read in the context of the surrounding claim language, "substantially filled" does not refer to the volume of fluid in the container, but rather further defines the elastic fastener limitation. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims.").

This error infected the rest of the Board's analysis and led it to conclude that the claim term is indefinite under *Packard* on "several levels." *Telebrands*, 2016 WL 7985419, at *7. We address each aspect of the Board's analysis below.

First, the Board found that "the [s]pecification consistently teaches that whether a container is 'filled' depends, subjectively, on whether a desired size or volume has been reached." *Id.* at *7. In support, the Board cited various instances where the specification recites detaching the containers when they reach a "desired size." *Id.* at *7 (quoting '066 patent, col. 3, ll. 48–51 ("After containers 18 have reached a desired size or volume, they may be detached from tubes 16. In one example embodiment, *filled containers* 18 may be detached by pulling them away from tubes 16." (emphasis added)); col. 4, ll. 6–9 ("In some embodiments, containers 18 may be marked with volumetric measurements, and fluid flow may be turned off when the fluid has *filled containers* 18 to a desired volume." (emphasis added)); col. 4, ll. 60–63 ("When containers 18 have reached a desired size and/or *they are filled* with the desired volume of fluid, they may be removed from tubes 16. They can be removed . . . by shaking them off." (emphasis added)); col. 5, ll. 43–46 ("When *fluid fills container* 18A to a desired volume, for example, as indicated by volumetric measurement marking 44, container 18A may be detached from tube 16A." (emphasis added))).

Again, the Board mistakenly interprets these statements in the specification divorced from the surrounding claim language of the disputed claim term. The claim language clearly sets forth that a container is substantially filled based not on the size or volume of the container, but rather on whether the container overcomes the connecting force of the elastic fastener such that it detaches upon shaking. Further, in *Tinnus II*, we found it significant that the "specification . . . does not define or equate

'substantially filled' with 'desired size.'" 846 F.3d at 1206.[3] Rather, we concluded, as we do now, that the claims themselves teach that, "if the balloons detach after shaking, then they are 'substantially filled.'" *Id.* Thus, we adopt our reasoning in *Tinnus II* to find that these statements from the specification do not render the claim term indefinite.

Telebrands argues that we must review the Board's determination that the term "filled" is indefinite for substantial evidence because it is based on the Board's subsidiary factual finding that "the level of water in a 'substantially filled' container is not ascertainable or measurable by reference to any objective standard." Appellee Br. at 40 (quoting J.A.32). The Board's ultimate determination of indefiniteness, however, is reviewed de novo. *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1022 (Fed. Cir. 2009); *cf. Cuozzo*, 135 S. Ct. at 841 ("[t]he district judge, after deciding the factual dispute, will then interpret the patent claim in light of the facts as he has found them. This ultimate interpretation is a legal conclusion."). Even if we find that substantial evidence supports the Board's factual finding as to the level of water, we need not defer to the Board's ultimate legal determination that this finding renders the claim term indefinite. Here, the inability to measure the level of water is ultimately irrelevant to whether the claim term is indefinite because a person of ordinary skill may still determine if a container is "substantially filled" if the

---

[3]     While our decision in *Tinnus II* has no preclusive effect because the indefiniteness issue there was embedded in a preliminary injunction analysis, and thus involved a different burden of proof and different standard of review than the issue presented in this case, 846 F.3d at 1205–06, we still find the merits of our reasoning from *Tinnus II* persuasive to our analysis here.

balloon detaches upon shaking. Thus, the Board's factual finding does not change our conclusion that the claim term is not indefinite.

Second, the Board found that claim 1's use of "expandable containers" adds a second level of ambiguity because "neither claim 1 nor the [s]pecification provides an objective standard for measuring the scope of [the disputed claim term] as applied to an expandable container." *Telebrands*, 2016 WL 7985419, at *10. In support, the Board points to the testimony of Tinnus's expert, Dr. Kudrowitz, and states that his analysis "highlights [this] second level of ambiguity." *Id.*

Here, we find, as we did in *Tinnus II*, that the claim language and the specification of the '066 patent clearly set out the objective boundaries for the claim term in the context of expandable containers such as balloons—i.e., "if the balloons detach after shaking, then they are substantially filled." 846 F.3d at 1206. The Board's conclusion that Dr. Kudrowitz's testimony highlights "a second level of ambiguity" does not persuasively counter the weight of the intrinsic evidence.

Telebrands argues that we must review the Board's finding that an expandable container adds a second layer of ambiguity for substantial evidence because the Board's reasoning is based in its assessment of testimony from Dr. Kudrowitz and Telebrands's expert, Dr. Kamrin. As Tinnus notes, however, "Telebrands attempts to cloud the issue by claiming that the Board's alleged findings of fact are the real reason why the Board reached its conclusion," when instead, "none of the 'facts' raised by Telebrands served as the basis for the Board's decision." Reply Br. at 14. We agree with Tinnus at least as to Dr. Kamrin's testimony because nowhere in the Board's discussion of this purported "second level of ambiguity" does the Board reference or cite to Dr. Kamrin's testimony.

Regardless, we need not defer to the Board's assessment of Dr. Kamrin's testimony or of Dr. Kudrowitz's testimony when it is inconsistent, as it is here, with the intrinsic evidence. *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017) ("[W]e must disregard the testimony of an expert that is plainly inconsistent with the record, or based on an incorrect understanding of the claim[s]" (citations and internal quotation marks omitted)).  Here, we find that the Board's assessment that the expert testimony "highlights a second level of ambiguity" is inconsistent with the intrinsic evidence, because the intrinsic evidence sets out the objective boundaries for the claim term within the context of expandable containers.  Therefore, we need not defer to the Board's assessment of the expert testimony.

Third, the Board found "that the claims are unclear and indefinite for the additional reason that there is no standard by which one of ordinary skill in the art can measure 'substantially' so as to understand what is claimed when the claims are read in light of the [s]pecification."  *Telebrands*, 2016 WL 7985419, at \*14. As stated above, this court has repeatedly confirmed that relative terms such as "substantially" do not render a patent claim per se indefinite.  *Deere*, 703 F.3d at 1359. Here, the claim language and the specification guide the determination of whether a balloon is "substantially filled."  Thus, we are not persuaded that the use of "substantially" in claim 1 renders the claim indefinite.

### III. CONCLUSION

We have considered the parties' other arguments and find them unpersuasive.[4]  For the foregoing reasons, we

---

[4]     Tinnus also argues that the PGR proceeding violated Tinnus's constitutional rights.  We reject this argument in view of the Supreme Court's decision in *Oil States*

*reverse* the Board's finding that the '066 patent is unpatentable as indefinite and *remand* for further proceedings consistent with this opinion and the Supreme Court's intervening holding in *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018).

**REVERSED AND REMANDED**

Costs

No costs.

---

*Energy Services, LLC v. Greene's Energy Group, LLC*, 138 S. Ct. 1365, 1373–74 (2018), holding that inter partes review proceedings do not violate a patent owner's constitutional rights because patents are the grant of a public franchise. We find that the Supreme Court's holding in *Oil States* applies equally in the context of PGR proceedings.